UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELLIOT MAY,

                              Petitioner,

        v.

THOMAS GRIFFIN, Superintendent,

                              Respondent.

No. 17-CV-6319 (KMK) (JCM)

<u>ORDER ADOPTING REPORT &
RECOMMENDATION</u>

<u>Appearances:</u>

Elliot May
Ossining, NY
*Pro Se Petitioner*

John Sergi, Esq.
Lisa Denig, Esq.
Westchester County District Attorney's Office
White Plains, NY
*Counsel for Respondent*

KENNETH M. KARAS, District Judge:

        Elliot May ("Petitioner"), proceeding pro se, has filed a Petition for a Writ of Habeas

Corpus (the "Petition") pursuant to 28 U.S.C. § 2254, challenging his October 23, 2009

conviction, following a jury trial in New York Supreme Court, Westchester County ("County

Court"), for two counts of Burglary in the First Degree, one count of Assault in the First Degree,

and two counts of Bribing a Witness in the First Degree.  (*See generally* Pet. for Writ of Habeas

Corpus ("Pet.") (Dkt. No. 1).)[1]

---

        [1] The Petition includes as part of the same document both the "Petition for a Writ of
Habeas Corpus" and "Petitioner's Memorandum of Law in Further Support of Writ of Habeas
Corpus," and the two are not consecutively paginated.  (*See* Pet.)  For ease of reference, when

On May 20, 2010, Petitioner moved before the County Court to set aside the verdict pursuant to New York Criminal Procedure Law ("NY CPL") § 330.30 ("330.30 Motion"), which the County Court denied on June 22, 2010.  (*See* Resp't's Mem. of Law in Opp'n to Pet. ("Resp't's Opp'n") Exs. 5 (Dkt. Nos. 11-7–11-11) & 7 (Dkt. No. 11-13).)  On August 16, 2010, Petitioner filed a notice of appeal from the judgment of conviction, but before filing his brief, moved before the County Court to vacate his conviction pursuant to NY CPL § 440.10 ("440.10 Motion").  (*See* Resp't's Opp'n Ex. 11 (Dkt. Nos. 11-17–11-20); *see also* Pet. 2–3; Aff. in Opp'n to Pet. ("Resp't's Aff.") 16–17 (Dkt. No. 11).)  On December 9, 2014, Petitioner filed his brief on his direct appeal before the Second Department.  (*See* Resp't's Opp'n Ex. 14 (Dkt. Nos. 11-23–11-25).)

The County Court denied Petitioner's 440.10 Motion on January 13, 2015.  (*See* Resp't's Opp'n Ex. 15 (Dkt. No. 11-26).)  On February 18, 2015, Petitioner sought leave to appeal the County Court's denial of the 440.10 Motion, (*see* Resp't's Opp'n Ex. 17 (Dkt. No. 11-30)), which the New York Supreme Court Appellate Division, Second Department ("Second Department") denied on September 11, 2015, (*see* Resp't's Opp'n Ex. 18 (Dkt. No. 11-31)).

On April 20, 2016, the Second Department affirmed Petitioner's conviction.  *See People v. May*, 138 A.D.3d 1024 (N.Y. App. Div. 2016).  Petitioner sought leave to appeal the Second Department's affirmance via letters dated April 20, 2016, May 16, 2016, and June 10, 2016, (*see* Resp't's Opp'n Ex. 22 (Dkt. Nos. 11-36–11-37)), which the New York Court of Appeals ("Court of Appeals") denied on August 1, 2016, *see People v. May*, 28 N.Y.3d 933 (2016).

---

citing to the "Petition," the Court refers to the document as a whole and to the ECF-stamped page numbers at the top right-hand corner of each page.

Petitioner timely filed the Petition on August 11, 2017.  (*See* Pet.)  Respondent filed a Memorandum of Law opposing the Petition on December 6, 2017.  (*See* Resp't's Opp'n; Resp't's Aff.)  Petitioner filed a Reply and "Supplement to Petition" on March 5, 2018.  (*See* Pet'r's Reply & Suppl. to Pet. ("Pet'r's Reply") (Dkt. No. 21).)  Respondent submitted a supplemental letter on March 27, 2018, (Dkt. No. 22), to which Petitioner replied on April 6, 2018, (Dkt. No. 23).

In a Report and Recommendation ("R&R") dated March 15, 2021, Magistrate Judge Judith C. McCarthy ("Judge McCarthy") recommended that the Petition be denied in its entirety.  (*See* Report & Recommendation ("R&R") 1 (Dkt. No. 25).)  Petitioner filed Objections to the R&R on May 16, 2021, after seeking and receiving an extension of time to object.  (*See* Objections ("Obj's") (Dkt. No. 32).)[2]  Respondent has not responded to the Objections.  After a review of the R&R and Petitioner's Objections, the Court adopts the result recommended in the R&R and denies the Petition.

## I.  Background

The factual and procedural background of this case is set forth in the R&R and the Court assumes the Parties' familiarity therewith.  (*See* R&R 1–12.)  The Court nevertheless summarizes the relevant facts.

Late at night on October 10, 2007, Petitioner knocked on the door of a third-floor apartment in New Rochelle in which Pedro Gonzalez ("Gonzalez") lived with a roommate.  (Resp't's Aff. 2–3.)  At the time, both Gonzalez and his roommate were inside the apartment,

---

[2] The Court notes that there are two sets of Objections on the docket, docketed six days apart.  (*See* Dkt. Nos. 31, 32.)  The two Objections are substantively identical, but the first set of Objections omits all even-numbered pages.  The Court will assume that the duplicate docket entries are the result of an administrative or clerical error and will consider only the second-filed set of Objections.  (*See* Dkt. No. 32.)

along with Gonzalez's girlfriend, Tracy Steadman ("Steadman").  (*Id.* at 2.)  Gonzalez and Steadman had at that time been dating for several months, and Steadman had repeatedly commented on Gonzalez's jewelry collection, which led Gonzalez to become concerned that Steadman would attempt to steal from him.  (*Id.* at 2.)  As a result, Gonzalez stored his jewelry in his roommate's padlocked safe.  (*Id.*)

Steadman shares a child with Petitioner, and the two had been in close telephone contact throughout the entire day of October 10, 2007, speaking on the phone approximately 39 times, including 3 calls in the minutes before Petitioner arrived at the apartment.  (*Id.* at 2–3.)  When Petitioner knocked on the door of the apartment, Steadman urged Gonzalez to open it, and Petitioner and an accomplice forced themselves inside.  (*Id.* at 3.)  Petitioner pointed a gun at Gonzalez and demanded that Gonzalez give Petitioner his jewelry, pistol-whipping Gonzalez in the head upon Gonzalez's refusal.  (*Id.*)  Petitioner's accomplice held Gonzalez's roommate at gunpoint.  (*Id.*)  After additional violence which caused Gonzalez's head to split open, Gonzalez freed himself from Petitioner and jumped out of his bedroom window, landing feet first on the ground.  (*Id.* at 3–4.)  Gonzalez suffered paralysis from the waist down due to the injuries he sustained from the jump, and required approximately 100 stitches for his head wounds.  (*Id.*)  Petitioner, Steadman, and Petitioner's accomplice fled the scene without Gonzalez's jewelry; the padlocked safe was still intact and closed when police arrived later that night.  (*Id.* at 3; Resp't's Opp'n 11.)

Based on information from Gonzalez, police were able to get in contact with Steadman, who inculpated Petitioner.  (Resp't's Aff. 4.)  On November 30, 2007, Gonzalez identified Petitioner as his assailant in a photographic array.  (*Id.* at 4 n.2.)  Petitioner and Steadman were both arrested on January 9, 2008, and on June 6, 2008, were indicted and charged with two

4

counts of Burglary in the First Degree, two counts of Attempted Robbery in the First Degree, and one count of Assault in the First Degree.  (*Id.* at 4–5.)

While in detention prior to his indictment, Petitioner met Kendall Miller ("Miller"), who told Petitioner that he knew Gonzalez and had heard about the robbery and Gonzalez's injuries. (*Id.* at 5.)  Petitioner told Miller that he had been arrested in connection with that incident, but said he was innocent, and offered Miller $2,000 to get in touch with Gonzalez upon Miller's release.  (*Id.*)  Miller agreed.  (*Id.*)  Several weeks later, Miller and a friend of Petitioner's, Kyrie Baum ("Baum"), visited Gonzalez in the nursing home in which Gonzalez was convalescing, and Baum offered Gonzalez $5,000 and clothing if he would agree not to testify against Petitioner. (*Id.* at 5–6.)  Over the next several weeks, Petitioner called Miller and Baum repeatedly on recorded phone lines from the jail asking Miller and Baum to do additional tasks, including to show Gonzalez bodybuilding photographs of Petitioner, buy Gonzalez medication, find a place for Gonzalez to live, and arrange a hotel room for Gonzalez during Petitioner's trial so that Gonzalez could testify to Petitioner's innocence.  (*Id.* at 6.)

In July 2008, Petitioner's private investigator, Dwayne Kirkland ("Kirkland"), illegally gained access to a restricted area of a hospital where Gonzalez was a patient in order to interview Gonzalez—and surreptitiously recorded that interview.  (*Id.* at 7.)  During the interview, Kirkland showed Gonzalez a photographic array to determine if Gonzalez would be able to identify Petitioner as his assailant.  (*Id.* at 7.)  Gonzalez made at least a partial identification of Petitioner to Kirkland.  (*Id.* at 14.)  Kirkland also offered Gonzalez $10,000.  (*Id.* at 7.)

In December 2008, Baum and Miller were both arrested and Baum, Miller, and Petitioner were all charged with bribery counts.  (*Id.*)  A superseding indictment filed on January 6, 2009 charged Petitioner with two counts of Burglary in the First Degree, two counts of Attempted

5

Robbery in the First Degree, one count of Assault in the First Degree, and two counts of Attempted Bribing of a Witness.  (*Id.*)

At trial—as relevant to Petitioner's Objections—Petitioner called Kirkland to testify in his case-in-chief.  (*Id.* at 13.)  On a Friday afternoon, Petitioner's counsel notified the County Court of his intent to call Kirkland the following Monday, and informed the County Court that Kirkland's car had been broken into and the recordings of his conversation with Gonzalez had been stolen, though Kirkland may have retained the photographic array allegedly used when he interviewed Gonzalez.  (*Id.*)  After a lengthy discussion on the following Monday morning, the County Court ruled that the prosecution could not explore the photographic array unless Petitioner's counsel opened the door.  (*Id.*)  Later that day, during the prosecution's cross-examination of Kirkland, Kirkland indicated that he did, in fact, possess a copy of the recording, plus a transcript that he had created.  (*Id.*)  During a recess, Petitioner's counsel informed the County Court that Kirkland had brought the recording and the transcript to court that morning, and claimed that he had forgotten to raise the issue because he was focused on preparing his summation.  (*Id.* at 13–14.)  The County Court then sanctioned Petitioner's counsel and allowed the prosecution to cross-examine Kirkland on the topic of the photographic array.  (*Id.* at 14.)  Despite Kirkland's testimony to the contrary on direct examination (in which Kirkland testified that Gonzalez told him that he was not able to see his assailant due to blood running into his eyes from his head wounds), the transcript of Kirkland's interview of Gonzalez demonstrated that Gonzalez had made a partial identification of Petitioner using the photographic array.  (*Id.* at 14; *see also* Resp't's Opp'n Ex. 5-B, at 802:4–25; *id.* at 874:7–14 (quoting from transcript,

'[Gonzalez]: It looks close to this guy, very close to this guy'".).)[3]  The prosecution also cross-examined Kirkland on several other topics (such as previous suspensions of Kirkland's private investigator license and the dubious circumstances under which he conducted his interview of Gonzalez) to impugn his credibility before the jury.  (Resp't's Opp'n Ex. 5-B, at 803:7–820:15, 856:19–877:18.)  On October 23, 2009, the jury found Petitioner guilty of two counts of Burglary in the First Degree, one count of Assault in the First Degree, and two counts of Attempted Bribing of a Witness.  (Resp't's Aff. 14.)

On May 20, 2010, Petitioner filed his 330.30 Motion via new retained counsel, arguing— as relevant to Petitioner's Objections—that his trial counsel provided ineffective assistance due to his failure "to utilize an investigator of his own" and to "work with the investigator [Petitioner] retained," explaining "[i]t was obvious that the trial attorney failed to converse with the private investigator in any meaningful manner and failed to review the material that was provided by the investigator, and did not listen to a tape of the private investigator with [Gonzalez]."  (Resp't's Opp'n Ex. 5, at 4.)  Petitioner argued that his trial counsel's decision "to call the investigator on behalf of [Petitioner]" when "it was apparent that the attorney had not in any manner prepared for this witness" had prejudiced Petitioner, since Kirkland's testimony was "of paramount importance . . . because the most damaging evidence was [Gonzalez's] testimony against [Petitioner]."  (*Id.* at 5.)  The County Court denied Petitioner's 330.30 Motion on

---

[3] Exhibit 5 to Respondent's Opposition includes both Petitioner's 330.30 Motion and two exhibits to that motion (a declaration from Petitioner and portions of the trial transcript), and was filed in multiple parts.  (*See* Dkt. Nos. 11-7–11-11.)  When citing to Petitioner's 330.30 Motion, the Court refers to Exhibit 5 to Respondent's Opposition and the ECF-stamped page numbers at the top-right corner of each page.  When citing to Exhibit A to Petitioner's 330.30 Motion, the Court refers to Exhibit 5-A to Respondent's Opposition and the ECF-stamped page numbers at the top-right corner of each page.  When citing to Exhibit B to Petitioner's 330.30 Motion, the Court refers to Exhibit 5-B to Respondent's Opposition and the document's native pagination, in the form of "[Page]: [Line]."  Each citation may span multiple docket entries.

June 22, 2010, explaining that "[t]he record herein does not suggest that there is a reasonable probability that, but for any error [Petitioner] attributes to his trial counsel, the jury would have reached a different verdict in this case or that [Petitioner] was prejudiced as a result of his trial counsel's deficiencies."  (Resp't's Opp'n Ex. 7, at 4.)

On July 11, 2014, Petitioner filed his 440.10 Motion pro se, arguing again—as relevant to Petitioner's Objections—that his trial counsel provided ineffective assistance, this time for failure to object to what Petitioner considered to be a "repugnant verdict," given that Petitioner was convicted of Burglary in the First Degree but acquitted of Attempted Robbery in the First Degree.  (Resp't's Opp'n Ex. 11, at 5, 21 (Dkt. No. 11-17).)[4]  Petitioner argued that "a single error may qualify as ineffective assistance of counsel" if "that error [is] sufficiently egregious and prejudicial as to compromise a defendant's right to a fair trial," and argued that his trial counsel's failure to object to the "repugnant verdict" constituted such an error.  (Resp't's Opp'n Ex. 11, at 4–5 (Dkt. No. 11-18).)

Petitioner filed his notice of direct appeal on August 16, 2010 and submitted his brief on December 9, 2014.  (Resp't's Opp'n Ex. 14.)  As relevant to Petitioner's Objections, Petitioner argued—via new, court-appointed appellate counsel, (Resp't's Aff. 16)—once more that he was deprived of effective assistance of counsel, for several reasons, (Resp't's Opp'n Ex. 14, at 52–57).[5]  First, Petitioner argued that the County Court erred in denying his 330.30 Motion,

---

[4] Exhibit 11 to Respondent's Opposition was filed in multiple parts.  (*See* Dkt. Nos. 11-17–11-20.)  When citing to Exhibit 11 to Respondent's Opposition, the Court refers to the specific docket number containing the subpart in which the pertinent language appears and refers to the ECF-stamped page numbers at the top-right corner of each page.

[5] Exhibit 14 to Respondent's Opposition was filed in multiple parts.  (*See* Dkt. Nos. 11-23–11-25.)  However, the subparts retain the document's native, consecutive pagination.  As such, when citing to Exhibit 14 to Respondent's Opposition, the Court refers to the native pagination, which may span multiple docket entries.

reasserting his contention that his counsel's "fail[ure] to properly preserve and notice for use at trial the critical tapes and records defense investigator Kirkland had made of his meeting with [Gonzalez]" had prejudiced Petitioner.  (*Id.* at 52; *see also id.* at 56–57 (explaining trial counsel's "fail[ure] to properly review, research and preserve the critical materials . . . [that] Kirkland . . . made").)  Petitioner also argued that in stating during summation that "[t]he People of the State of New York is [sic] served by any verdict you bring back here," his counsel "surrendered the presumption of innocence and waived the People's burden of proof."  (*Id.* at 56 (citation and italics omitted).)  On July 20, 2015, Petitioner also filed a pro se supplemental brief in support of his direct appeal, in which he seemed to echo his argument that his trial counsel failed to make appropriate use of the results of Kirkland's investigation and to add a claim that his trial counsel "fail[ed] to consistently object to the improper hearsay," though he did not specify what such "improper hearsay" allegedly was.  (Resp't's Opp'n Ex. 20, at 38 (Dkt. Nos. 11-33–11-34).)[6]

On January 15, 2015, the County Court denied Petitioner's 440.10 Motion, explaining, in relevant part, that Petitioner's ineffective assistance claim was ineligible for relief under NY CPL § 440.10 as "record-based," because Petitioner could have obtained adequate relief for his claims via a direct appeal.  (Resp't's Opp'n Ex. 15, at 3–5.)  The County Court further noted that "[e]ven if [the County Court] were to reach the merits of [Petitioner's] ineffective assistance of counsel claims," the County Court would have been "compelled to find that [Petitioner] ha[d] failed to make a threshold showing through the instant application that he was deprived of the

---

[6] Exhibit 20 to Respondent's Opposition was filed in multiple parts.  (*See* Dkt. Nos. 11-33–11-34.)  However, the subparts retain the document's native, consecutive pagination.  As such, when citing to Exhibit 20 to Respondent's Opposition, the Court refers to the native pagination, which may span multiple docket entries.

effective assistance of counsel in this case," because he "failed to support his ineffective assistance of counsel claims with sufficient sworn allegations substantiating or tending to substantiate all of the essential facts," pursuant to NY CPL § 440.30.  (*Id.* at 6 (quotation marks omitted).)

The Second Department denied Petitioner leave to appeal the denial of the 440.10 Motion on September 11, 2015.  (*See* Resp't's Opp'n Ex. 18.)  And, on April 20, 2016, the Second Department affirmed Petitioner's conviction.  *See May*, 138 A.D.3d at 1024–27.  The Second Department did not address Petitioner's ineffective assistance claims in detail, but ruled that Petitioner "failed to show that he was deprived of a fair trial by receiving less than meaningful representation."  *Id.* at 1027.

On April 20, 2016, Petitioner's appellate counsel filed a letter seeking leave to appeal the Second Department's affirmance of Petitioner's conviction to the Court of Appeals, which was followed by another letter on June 10, 2016.  (*See* Resp't's Opp'n Ex. 22 (Dkt. No. 11-36).)[7]  In the letters, Petitioner's counsel sought to appeal "each and every contention raised in [Petitioner's] briefs on the direct appeal, and in his supplemental pro se brief," plus three additional grounds, none of which concerned ineffective assistance.  (*Id.* at 2, 4–7 (Dkt. No. 11-36) (italics omitted).)  On May 16, 2016, Petitioner filed an additional letter seeking leave to appeal to the Court of Appeals pro se, in which he argued that he was denied effective assistance of trial counsel due to multiple alleged failures by trial counsel.  (*Id.* at 9–12 (Dkt. No. 11-37).)  First, Petitioner appears to have argued that his trial counsel failed to elicit hearsay from his co-

---

[7] Exhibit 22 to Respondent's Opposition includes three separate letters, which are not consecutively paginated, and were filed in multiple parts.  When citing to Exhibit 22 to Respondent's Opposition, the Court refers to the specific docket number containing the subpart in which the pertinent language appears and refers to the ECF-stamped page numbers at the top-right corner of each page.

defendants Steadman and Baum, who apparently could have testified to Petitioner's alibi: that he was on his way back to Brooklyn at the time that the crimes were committed. (*Id.* at 9 (Dkt. No. 11-37).) Alternatively, he argued that his trial counsel failed to "investigate and acquire footage from the cameras at the toll booth [Petitioner] passed through." (*Id.* at 10 (Dkt. No. 11-37).) Second, Petitioner reiterated his argument that his trial counsel "neglected to turnover [sic] a tape recording and transcript of defense investigator . . . Kirkland's interview with . . . Gonzalez, resulting in the defense being sanctioned by the [County] Court, overruling its prior decision regarding the [prosecution] being able to inquire into the procedure defense investigator Kirkland used in showing a photo array to . . . Gonzalez." (*Id.* at 9–10 (Dkt. No. 11-37).) Third, Petitioner argued that his trial counsel "fail[ed] to consistently object to the voluminous hearsay," violating Petitioner's Sixth Amendment Confrontation Clause rights, perhaps referencing alleged "hearsay statements of . . . Baum and [Petitioner]," introduced via Miller's (and possibly Gonzalez's) testimony. (*Id.* at 9, 11–12 (Dkt. No. 11-37).)[8] On August 1, 2016, the Court of Appeals denied Petitioner leave to appeal the affirmance of his conviction. *See May*, 28 N.Y.3d at 933.

Petitioner filed the Petition on August 11, 2017, which he "supplemented" on March 5, 2018, raising a total of 14 grounds for relief. (*See* Dkt. Nos. 1, 21.) Judge McCarthy issued the R&R on March 15, 2021, recommending that this Court deny Petitioner's request for relief and dismiss the Petition in its entirety. (*See* R&R 1.) Petitioner subsequently filed the Objections, objecting only to Judge McCarthy's rejection of his claim of ineffective assistance of counsel. (*See* Dkt. No. 32.)

---

[8] Petitioner's letter seeking leave to appeal to the New York Court of Appeals is not a model of clarity, and it is unclear to this Court what exact testimony Petitioner claims constituted inadmissible hearsay.

## II. Discussion

### A. Applicable Law

#### 1. Review of a Magistrate Judge's R&R

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject or modify, in whole or in part, the findings or recommendations made by a magistrate judge." 28 U.S.C. § 636(b)(1). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and recommendation. *See id.*; FED. R. CIV. P. 72(b)(2). The objections must be "specific" and "written," FED. R. CIV. P. 72(b)(2), and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant to Federal Rules of Civil Procedure 5(b)(2)(C)–(F), *see* FED. R. CIV. P. 6(d), for a total of seventeen days, *see* FED. R. CIV. P. 6(a)(1).

Where a party submits timely objections to a report and recommendation, as Petitioner has done here, the Court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3). The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting FED. R. CIV. P. 72(b)(2)).

Finally, pleadings submitted by pro se litigants are held to a less strict standard than those drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser standard than other parties."

(italics omitted)).  Because Petitioner is proceeding pro se, the Court construes his pleadings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (emphasis and quotation marks omitted).  However, this "does not exempt a [pro se litigant] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

2.  Standard of Review for Habeas Corpus Claims

Petitions for writs of habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that a state prisoner may seek habeas corpus relief in federal court "on the ground that he is in custody in violation of the Constitution or laws . . . of the United States."  28 U.S.C. § 2254(a).  "The writ may not issue for any claim adjudicated on the merits by a state court unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'"  *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)–(2)).  In this context, "it is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner."  *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("The petitioner carries the burden of proof.").

A decision is "contrary to" clearly established Federal law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."  *Williams v.*

13

*Taylor*, 529 U.S. 362, 405–06 (2000).  A decision is "an unreasonable application of clearly established Federal law" if a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08 (alterations and quotation marks omitted).  "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions.  And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice."  *White v. Woodall*, 572 U.S. 415, 419 (2014) (citations and quotation marks omitted); *see also id.* (noting that a petitioner must show a state court ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" (quotation marks omitted)); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quotation marks omitted).  Consequently, a federal court must deny a habeas petition in some circumstances even if the court would have reached a conclusion different than the one reached by the state court, because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 102; *see also Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) ("[A] federal court may intrude on a State's sovereign power to punish offenders only when a decision was so lacking in justification beyond any possibility for fairminded disagreement." (quotation marks and ellipsis omitted)); *Cullen*, 563 U.S. at 202–03 ("Even if the [Federal] Court of Appeals might

have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the [state court] to conclude that [the petitioner] did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012) ("Although we might not have decided the issue in the way that the [New York State] Appellate Division did—and indeed we are *troubled by the outcome we are constrained to reach*—we . . . must defer to the determination made by the state court . . . ." (emphasis added) (citation omitted)).

Additionally, under AEDPA, the factual findings of state courts are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1); *Nelson v. Walker,* 121 F.3d 828, 833 (2d Cir. 1997) ("When reviewing a habeas petition, the factual findings of the New York Courts are presumed to be correct." (alteration and quotation marks omitted)). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003) (same).

Finally, only Federal law claims are cognizable in habeas proceedings. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

### 3.  Procedural Requirements for Habeas Corpus Claims

"Habeas review is an extraordinary remedy," *Bousley v. United States*, 523 U.S. 614, 621 (1998), and a petitioner seeking a writ of habeas corpus must comply with the strict requirements

of AEDPA, *see* 28 U.S.C. § 2254.  Before the Court reviews the merits of a habeas corpus

petition, the Court must determine whether Petitioner complied with the procedural requirements

set forth in 28 U.S.C. §§ 2244 and 2254.

### a.  Timeliness

AEDPA imposes upon a petitioner seeking federal habeas relief a one-year statute of

limitations.  *See* 28 U.S.C. § 2244(d)(1).  The statute of limitations is tolled if any state post-

conviction proceedings are pending after the conviction becomes final.  *See* 28 U.S.C.

§ 2254(d)(2).  The limitations period is also subject to equitable tolling, which is warranted only

when a petitioner has shown "(1) that he [or she] has been pursuing his [or her] rights diligently,

and (2) that some extraordinary circumstances . . . prevented timely filing."  *Finley v. Graham*,

No. 12-CV-9055, 2016 WL 47333, at *5 (S.D.N.Y. Jan. 4, 2016) (alterations in original)

(quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

### b.  Procedural Bar

A federal court "will not review questions of federal law presented in a habeas petition

when the state court's decision rests upon a state-law ground that is independent of the federal

question and adequate to support the judgment."  *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir.

2011) (quotation marks omitted).  A judgment is "independent" if the "last state court rendering

a judgment in the case clearly and expressly states that its judgment rests on a state procedural

bar."  *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quotation marks omitted).  A procedural bar is

"adequate . . . if it is based on a rule that is firmly established and regularly followed by the state

in question."  *Monroe v. Kuhlman*, 433 F.3d 236, 241 (2d Cir. 2006) (quotation marks omitted).

In "exceptional cases," the "exorbitant application of a generally sound [state procedural] rule

renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002).

### c.  Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation and quotation marks omitted); *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."). To satisfy this requirement, "the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (quotation marks omitted); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the state, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."). This requirement reflects important "notions of comity between the federal and State judicial systems." *Strogov v. Att'y Gen. of State of N.Y.*, 191 F.3d 188, 191 (2d Cir. 1999).

There are two components to the exhaustion requirement. *See McCray v. Bennet*, No. 02-CV-839, 2005 WL 3182051, at *7 (S.D.N.Y. Nov. 22, 2005) ("A two-step analysis is used to determine whether a claim has been exhausted . . . ."). First, "a petitioner [must] fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Carvajal v. Artus*, 633 F.3d 95, 104

(2d Cir. 2011) (alterations and quotation marks omitted); *see also Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (same); *Oliver v. Kirkpatrick*, No. 06-CV-6050, 2012 WL 3113146, at *5 (E.D.N.Y. July 31, 2012) (same).  This requirement is satisfied if the claim is presented in a way that is "likely to alert the [state] court[s] to the claim's federal nature," *Carvajal*, 633 F.3d at 104 (quoting *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000)), and the state courts are "apprise[d] . . . of both the factual and the legal premises of the federal claims ultimately asserted in the habeas petition," *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005); *see also Bermudez v. Conway*, No. 09-CV-1515, 2012 WL 3779211, at *8 (E.D.N.Y. Aug. 30, 2012) (same).  In other words, a state prisoner need not cite "chapter and verse of the Constitution" to satisfy this requirement.  *Carvajal*, 633 F.3d at 104 (quotation marks omitted).  A petitioner may satisfy this requirement by:

> (a) reliance on pertinent federal cases employment constitutional analysis[;]
> (b) reliance on state cases employing constitutional analysis in like fact situations[;]
> (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution[;] and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* (quotation marks omitted).  However, it is "not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citation omitted).  Rather, the claims must be made in such a way so as to give the state courts a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim."  *Id.* (quotation marks omitted).

"Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim."  *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981), *overruled on other grounds*, *Daye v. Att'y Gen.*, 696 F.2d 186, 195 (2d Cir. 1982)

(en banc); *see also Pettaway v. Brown*, No. 09-CV-3587, 2010 WL 7800939, at *9 (S.D.N.Y.

May 3, 2010) (same), *adopted by* 2011 WL 5104623 (S.D.N.Y. Oct. 26, 2011).  In New York, "a

criminal defendant must first appeal his or her conviction to the Appellate Division, then must

seek further review of that conviction by applying to the Court of Appeals for a certificate

granting leave to appeal." *Galdamez*, 394 F.3d at 74.  If the petitioner fails to exhaust his or her

state remedies through the entire appeal process, he or she may still fulfill the exhaustion

requirement by collaterally attacking the conviction via available state methods. *See Klein*, 667

F.2d at 282–83 (noting that, "where the petitioner did not utilize all the appellate procedures of

the convicting state to present his claim . . . the petitioner must utilize available state remedies

for collateral attack of his conviction in order to satisfy the exhaustion requirement"); *Bernardez

v. Bannon*, No. 12-CV-4289, 2016 WL 5660248, at *3 (S.D.N.Y. Sept. 29, 2016).  For example,

in New York a defendant may challenge a conviction based on matters not in the record that

could not have been raised on direct appeal, *see* N.Y. CRIM. PROC. LAW § 440.10, but a

defendant may not seek collateral review of claims that could have been raised on direct appeal

and were not, *see id.* § 440.10(2)(c); *see also O'Kane v. Kirkpatrick*, No. 09-CV-5167, 2011 WL

3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("Under New York law, all claims that are record-

based must be raised in a direct appeal . . . . It is only when a defendant's claim hinges upon facts

outside the trial record, that he may collaterally attack his conviction by bringing a claim under

[NY] CPL § 440.10."), *adopted by* 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011).  In addition,

New York permits only one application for direct review. *See Jiminez v. Walker*, 458 F.3d 130,

149 (2d Cir. 2006) ("[The petitioner] has already taken his one direct appeal [under New York

law] . . . . ").  "New York procedural rules bar its state courts from hearing either claims that

could have been raised on direct appeal but were not, or claims that were initially raised on

appeal but were not presented to the Court of Appeals."  *Sparks v. Burge*, No. 12-CV-8270, 2012 WL 4479250, at *4 (S.D.N.Y. Sept. 18, 2014).

Accordingly, in those situations, a petitioner no longer has any available state court remedy, and the claims are therefore deemed exhausted, but procedurally defaulted.  *See Carvajal*, 633 F.3d at 104 ("If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, we must deem the claim procedurally defaulted." (alteration and quotation marks omitted)); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (noting the reality that deeming an unpresented claim to be exhausted is "cold comfort").  A dismissal of a habeas petition on such grounds is a "disposition . . . on the merits."  *Carvajal*, 633 F.3d at 104 (quotation marks omitted).  "An applicant seeking habeas relief may escape dismissal on the merits of a procedurally defaulted claim only by demonstrating 'cause for the default and prejudice' or by showing that he is 'actually innocent' of the crime for which he was convicted." *Id.* (quoting *Aparicio*, 269 F.3d at 90); *see also Dretke v. Haley*, 541 U.S. 386, 388 (2004) (holding that "a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of a cause and prejudice to excuse the default," or showing that the petitioner "is actually innocent of the underlying offense").

### 4.  Standard of Review for Ineffective Assistance of Counsel Claims

The Sixth Amendment of the United States Constitution provides that a criminal defendant shall enjoy the right to effective assistance of counsel.  *See Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (per curiam).  A claim for ineffective assistance of counsel is analyzed under the two-part test set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984): to be entitled to relief, a petitioner must show that (1) his or her attorney's conduct was

constitutionally deficient because it fell below an "objective standard of reasonableness," *id.* at 687–88, and (2) the petitioner was prejudiced by the ineffective representation—that is, but for the deficiency, there is a reasonable probability that "the result of the proceeding would have been different," *id.* at 694.

To determine whether counsel's conduct is deficient under the first prong, "the court must determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Lindstadt v. Keane*, 239 F.3d 191, 198–99 (2d Cir. 2001) (alterations and quotation marks omitted). A petitioner cannot meet this prong based solely on disagreements with counsel's strategy or advice. Indeed, there is a "strong presumption" that counsel's conduct fell within the vast spectrum of reasonable assistance, and it is the petitioner's burden to demonstrate "that counsel's representation was unreasonable under prevailing norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *see also Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) ("[W]e have often explained that strategic decisions . . . are entitled to a strong presumption of reasonableness [since] [d]efense lawyers have limited time and resources, and so must choose from among countless strategic options." (quotation marks and citation omitted)); *Henderson v. Martuscello*, No. 10-CV-5135, 2013 WL 6463348, at *15 (S.D.N.Y. Dec. 10, 2013) ("Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, even where counsel adopts a course of action (or inaction) that seems risky, unorthodox[,] or downright ill-advised." (citation and alteration omitted)). Thus, to satisfy this prong, a petitioner must demonstrate that his or her counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. In assessing counsel's conduct, "a reviewing court

21

must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 533 (2d Cir. 1994) (citations omitted) (quoting *Strickland*, 466 U.S. at 490).

To satisfy the second prong, "[the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding below would have been different." *United States v. Caracappa*, 614 F.3d 30, 49 (2d Cir. 2010) (quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding," as "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693. "'[P]urely speculative' arguments about the impact of an error do not establish prejudice." *DeCarlo v. United States*, No. 11-CV-2175, 2013 WL 1700921, at *4 (S.D.N.Y. Apr. 17, 2013) (alteration in original) (quoting *United States v. Weiss*, 930 F.3d 185, 199 (2d Cir. 1991)). Moreover, "a court hearing an ineffectiveness claim must consider the totality of the evidence . . . . [A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695–96.

Finally, the Supreme Court has instructed that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the [petitioner] makes an insufficient showing on one." *Id.* at 697.

B.  Application

In the Petition, Petitioner advanced five different theories to argue that his trial counsel's representation was constitutionally infirm: (1) trial counsel failed to object to the allegedly "repugnant and inconsistent verdict when the jury found [P]etitioner guilty of the burglary counts, and innocent of the attempted robbery counts," (Pet. 20); (2) trial counsel "surrendered the presumption of innocence and waived the [prosecution's] burden of proof" by stating that "The People of the State of New York is [sic] served by any verdict you bring back here" during defense summation, (*id.* at 7 (quotation marks omitted)); (3) trial counsel "failed to investigate and make proper use of investigatory materials" by failing to make use of "the information gathered by [Kirkland]" which allegedly showed that Gonzalez "failed to identify Petitioner," (*id.* at 7–8); (4) trial counsel failed to "investigate[] and gather[] evidence" pertaining to Petitioner's alleged alibi that he was in Brooklyn at the time that the crimes were committed, (*id.* at 13); and (5) trial counsel "failed to object to the plethora of instances where the [prosecution's] witnesses were permitted to testify to hearsay," (*id.*).  Judge McCarthy rejected all five claims, explaining that three of Petitioner's claims were unexhausted but either meritless or procedurally defaulted, and two were exhausted but meritless.  (R&R 49–56.)

Petitioner objects to Judge McCarthy's rejection of his claims, arguing: (1) that none of Petitioner's claims is procedurally defaulted as unexhausted but ineligible for NY CPL § 440.10 relief because Petitioner presents a "mixed claim" (i.e., based on facts both in the record and outside of the record), which is appropriate for review via a NY CPL § 440.10 proceeding, (Obj's 2–6); (2) that "[t]he State court record establishes that trial counsel did not investigate" the facts (as evidenced by trial counsel's lack of awareness as to the content of Kirkland's recording) or the law (as evidenced by trial counsel's failure to object to "the jury's repugnant

verdict"), (*id.* at 6); (3) that "[t]he State court record establishes that counsel called . . . Kirkland to testify on [P]etitioner's behalf <u>without</u> reviewing evidence that the witness possessed," leading to Kirkland's testimony "help[ing] the prosecution," rather than Petitioner, (*id.* at 6–7); (4) that trial counsel's statement during summation that "[t]he People of the State of New York is [sic] served by any verdict you bring back here," "allowed (and even invited) the jury to consider that [P]etitioner might be guilty of the crime," surrendering the presumption of Petitioner's innocence, (*id.* at 7–9 (quotation marks omitted)); and (5) that trial counsel "s[a]t back and allow[ed] the jury to reach . . . an inconsistent verdict, without lodging an objection," (*id.* at 10).

While Petitioner did not include any argument regarding his trial counsel's alleged failure to object to unspecified hearsay and to investigate Petitioner's alibi that he was in Brooklyn at the time of the crime—claims raised in his Petition, (*see* Pet. 13)—Petitioner did list trial counsel's "fail[ure] to object to hearsay at trial" and "fail[ure] to investigate [P]etitioner's alibi" in expounding his ineffective assistance of counsel claim, and argued that Judge McCarthy "failed to give [Petitioner's claims] proper consideration," (Obj's 2).  In light of Petitioner's pro se status, the Court will construe the Objections as raising objections to Judge McCarthy's dismissal of Petitioner's ineffective assistance of counsel claim based on his trial counsel's alleged failure to object to hearsay and alleged failure to investigate Petitioner's alibi.  *See Triestman*, 470 F.3d at 474 (explaining that pro se submissions shall be "construed liberally and interpreted so as to raise the strongest arguments that they suggest" (emphasis and quotation marks omitted)).

### 1.  Threshold Issue—Exhaustion

Judge McCarthy concluded that three of Petitioner's five claims of ineffective assistance were unexhausted because Petitioner failed to raise them via "the sole direct appeal to which he

is entitled under state law," (R&R 51 (citing N.Y. Cᴛ. Aᴘᴘ. R. § 550.20)): (1) that trial counsel's summation comment allegedly surrendered Petitioner's presumption of innocence; (2) that trial counsel failed to investigate Petitioner's alleged alibi; and (3) that trial counsel failed to object to the verdict as repugnant.  (R&R 51–54.)  And, for various reasons, Judge McCarthy found these claims to be subject to dismissal.  First, Judge McCarthy found Petitioner's unexhausted claim that his trial counsel's comment in summation allegedly surrendered the presumption of innocence to be "record-based" and ineligible for relief under NY CPL § 440.10.  (*Id.* at 51–52.) As such, Judge McCarthy deemed this claim to be exhausted, but procedurally defaulted, and declined to consider its merits.  (*Id.*)  Second, Judge McCarthy found Petitioner's unexhausted claim that his trial counsel failed to investigate Petitioner's alibi to be "plainly meritless."  (*Id.* at 52–53 (citing *Rhines v. Weber*, 544 U.S. 269, 277 (2005)).)  Third and finally, Judge McCarthy found Petitioner's unexhausted claim that his trial counsel was ineffective for failing to object to the verdict as repugnant to be procedurally barred because this claim was rejected by the County Court in ruling on Petitioner's 440.10 Motion.  (*Id.* at 53–54.)  Judge McCarthy explained that the County Court's ruling constituted an adequate and independent state ground for dismissal. (*Id.*)

In his Objections, Petitioner argues that Judge McCarthy's finding that his claims regarding his trial counsel's summation comment and failure to object were procedurally defaulted was in error, explaining that "the [County Court's] application of this procedural bar [pursuant to NY CPL § 440.10] was exhorbitant [sic]."  (Obj's 2.)  Petitioner argues that while NY CPL § 440.10 "mandates denial of a 'record-based' claim . . . when a defendant unjustifiably fails to raise that claim on direct appeal," this bar does not apply to "mixed claims" of ineffective assistance—those which are based on facts both in the record and outside of it.  (*Id.* at 2–3.)  As

such, Petitioner claims that "both the [County Court in ruling on Petitioner's 440.10 Motion] and [Judge McCarthy] reviewed [his] claim of ineffective asistance [sic] in parts—never viewing the claim in its entirety," the result of which was that both courts allegedly failed to give due consideration to the "cumulative effect[s]" of trial counsel's alleged errors.  (*Id.* at 4–5.)  And, because "no State court has reviewed the merits of [P]etitioner's entire claim of ineffective assistance of counsel," Petitioner urges this Court to review his claim de novo.  (*Id.* at 4–5.)

At the outset, both Petitioner and Judge McCarthy may have incorrectly recounted Petitioner's circuitous state court proceedings.  Judge McCarthy determined that "Petitioner is considered to have procedurally defaulted on his claim that counsel surrendered the presumption of innocence, since Petitioner did not raise it to the [Second Department] during the single direct appeal to which he was entitled, which would have been the appropriate forum to adjudicate this claim." (R&R 52.)  However, Petitioner did raise this claim in his direct appeal, (*see* Resp't's Opp'n Ex. 14, at 56 (arguing that "[t]he defense summation surrendered the presumption of innocence and waived the [prosecution's] burden of proof" (italics omitted))), and again in his application for leave to appeal the Second Department's affirmance of his conviction to the Court of Appeals, (*see* Resp't's Opp'n Ex. 22, at 2 (Dkt. No. 11-36) (seeking to appeal "each and every contention raised in [Petitioner's] briefs on the direct appeal" (emphasis omitted))).  Thus, Petitioner's claim that his counsel surrendered the presumption of innocence is, in fact, exhausted.  *See Klein*, 667 F.2d at 282 (explaining that to satisfy AEDPA's exhaustion requirement, a petitioner "must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts," and "utilized all available mechanisms to secure appellate review of the denial of that claim").  Petitioner for his part claims that he presented a "mixed claim" of ineffective assistance of counsel in his 440.10

Motion, and that the County Court in reviewing his 440.10 Motion improperly "bifurcate[d] the alleged failures of trial counsel," an error that Judge McCarthy allegedly repeated. (Obj's 2–4.) However, Petitioner raised only his claim that his trial counsel provided ineffective assistance for failure to object to the "repugnant verdict" in his 440.10 Motion, arguing that this "single error" was "sufficiently egregious and prejudicial as to compromise a defendant's right to a fair trial." (Resp't's Opp'n Ex. 11, at 4 (Dkt. No. 11-18).) And, this claim is clearly record-based, not "mixed."[9,10]

This procedural history is relevant because, as noted, AEDPA requires that "a state prisoner . . . exhaust state remedies" "[b]efore seeking a writ of habeas corpus." *Baldwin*, 541 U.S. at 29; *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a [State prisoner] shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."). This requirement is jurisdictional;

---

[9] In his 440.10 Motion, Petitioner also argued that his trial counsel was ineffective for "failing to object to the corroboration requirement to allow a conviction to stand against defendant" pursuant to NY CPL § 60.22. (Resp't's Opp'n Ex. 11, at 3 (Dkt. No. 11-17).) Petitioner did not advance this claim in the Petition, but in any event, it, too, is clearly record-based.

[10] Petitioner appears to have misunderstood Judge McCarthy's ruling on his claim that his trial counsel surrendered the presumption of innocence during summation. As noted above, Judge McCarthy found that this claim was unexhausted. (R&R 50–51.) However, because Judge McCarthy also found that Petitioner no longer has any available state court remedy for this claim, she determined the claim should be deemed exhausted, but procedurally defaulted. (*Id.* at 51–52.) *See also, e.g.*, *Carvajal*, 633 F.3d at 104 ("If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, we must deem the claim procedurally defaulted." (alteration and quotation marks omitted)). The reason Judge McCarthy found Petitioner lacked any available state court remedy is because (1) Petitioner already availed himself of the one direct appeal to which he is entitled under New York law, (R&R 51 (citing N.Y. CT. APP. R. § 500.20)), and (2) Petitioner's claim is ineligible for collateral attack in New York state courts via NY CPL § 440.10 because Petitioner's claim is record-based, (*id.* at 51–52). As such, Petitioner's argument concerning the state court's allegedly "exhorbitant [sic]" application of a procedural bar, (Obj's 2), is inapplicable. In any event, as explained above, Judge McCarthy's finding that this claim is unexhausted was in error.

where a petitioner fails to exhaust any of the claims raised in his or her habeas petition, the court "has no basis to retain jurisdiction" and the petition must be dismissed. *Baity v. McCary*, No. 20-CV-1817, 2002 WL 31433293, at *2 (E.D.N.Y. Oct. 31, 2002) (collecting cases); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991) ("[The Supreme Court] has long held that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims."); *Jackson v. DeMarco*, No. 11-CV-511, 2011 WL 809471, at *2 (E.D.N.Y. Feb. 23, 2011) (finding that "[the] [p]etitioner's § 2254 habeas claim is unexhausted and the [c]ourt must sua sponte dismiss it on that basis" (italics omitted)).  If a petitioner raises both exhausted and unexhausted claims, a district court has several options, including "dismiss[ing] [the] mixed habeas petition[]," *Pliler v. Ford*, 542 U.S. 225, 230 (2005), and using its discretion to enter a stay and hold the petition in abeyance to allow the petitioner to return to the state courts to present his or her unexhausted claims, *see Rhines*, 544 U.S. at 276–77.  However, the Supreme Court has instructed that it would be an abuse of discretion to grant a petitioner a stay and abeyance "when his unexhausted claims are plainly meritless." *Id.* at 277; *accord Duwe v. Bell*, No. 20-CV-5403, 2021 WL 4480555, at *2 (E.D.N.Y. Sept. 30, 2021) (explaining that "*Rhines* . . . requires a petitioner to establish that his claim is 'potentially meritorious,' or in other words, not 'plainly meritless'" to merit a stay and abeyance); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Here, the Court finds that Petitioner has presented both exhausted and unexhausted claims, but—for the reasons explained below—that Petitioner's unexhausted claims are either procedurally defaulted or plainly meritless, warranting dismissal.  As explained above,

Petitioner's claim that his trial counsel allegedly surrendered the presumption of innocence via his statement during summation is exhausted.  (*See* Resp't's Opp'n Ex. 14, at 56; Resp't's Opp'n Ex. 22, at 2 (Dkt. No. 11-36).)  The Court also finds, consistent with the R&R, that Petitioner's claims that his trial counsel failed to object to unspecified hearsay and failed to effectively utilize Kirkland as a witness are exhausted.  (*See* R&R 54.)[11]  However, Petitioner's claim that his trial counsel failed to investigate Petitioner's alibi is unexhausted, for the reason Judge McCarthy explained in the R&R: Petitioner raised this claim for the first time in his letter seeking leave to appeal the Second Department's affirmance of his conviction to the Court of Appeals.  (*See* R&R 50–51; *see also* Resp't's Opp'n Ex. 22, at 9–10 (Dkt. No. 11-37) (raising alibi claim in letter seeking leave to appeal to the Court of Appeals).)  Petitioner's claim that trial counsel failed to object to the allegedly repugnant verdict is also unexhausted, as Judge McCarthy determined. (R&R 53–54.)  Petitioner raised this claim in his 440.10 Motion only, which the County Court denied as ineligible for NY CPL § 440.10 relief; thus, Petitioner failed to give the New York state courts a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim."  *Anderson*, 459 U.S. at 6.[12]

---

[11] *See also* Resp't's Opp'n Ex. 20, at 38 (raising hearsay claim in direct appeal to Second Department); Resp't's Opp'n Ex. 22, at 2 (Dkt. No. 11-36) & 9, 10  (Dkt. No. 11-37) (raising hearsay claim in letter seeking leave to appeal to Court of Appeals); Resp't's Opp'n Ex. 5, at 4–5 (raising claim regarding Kirkland in 330.30 Motion); Resp't's Opp'n Ex. 14, at 52, 56–57 (raising claim regarding Kirkland in direct appeal to Second Department); Resp't's Opp'n Ex. 22, at 2 (Dkt. No. 11-36) & 9–10 (Dkt. No. 11-37) (raising claim regarding Kirkland in letter seeking leave to appeal to Court of Appeals).

[12] While not dispositive, this Court also notes that the County Court rendered its ruling on Petitioner's 440.10 Motion on January 13, 2015, six months before Petitioner filed a supplemental brief in support of his direct appeal to the Second Department—which the Second Department considered in ruling on Petitioner's appeal.  *See May*, 138 A.D.3d at 1027.  (*See also* Resp't's Opp'n Ex. 15 (County Court's ruling on Petitioner's 440.10 Motion); Resp't's Opp'n Ex. 20 (Petitioner's supplemental brief in support of his direct appeal to the Second Department).)  Thus, Petitioner could have easily raised his claim that trial counsel failed to

However, as noted above and for the reasons explained below, Petitioner's unexhausted claims are either procedurally barred or "plainly meritless," *Rhines*, 544 U.S. at 277, and thus, warrant dismissal.  The Court will examine each of Petitioner's claims, both exhausted and unexhausted, in turn.[13]

### 2.  Ineffective Assistance of Counsel Claims

#### a.  Failure to Investigate Generally

Petitioner argues in the Objections that "[t]he State court record establishes that trial counsel did not investigate" either the facts (based on trial counsel's lack of awareness of "what was on . . . Kirkland's tape-recorded interview with [Gonzalez]") or the law (based on trial counsel's failure to "object[] to the jury's repugnant verdict").  (Obj's 6.)  To the extent Petitioner seeks habeas relief on a claim of ineffective assistance based on his trial counsel's

---

object to the allegedly repugnant verdict in his direct appeal after he received the County Court's decision on his 440.10 Motion.

[13] Petitioner argues that Judge McCarthy "reviewed [his] claim of ineffective asistance [sic] in parts" and "never view[ed] the claim in its entirety."  (Obj's 4.)  While Petitioner is correct that Judge McCarthy found that she was barred from considering certain of Petitioner's claims, Judge McCarthy was simply complying with the strict procedural requirements for federal habeas review set out in federal statutory and case law.  *See supra* II.A.3.  This Court has already explained that one of Judge McCarthy's determinations was in error, but Petitioner cannot sidestep statutorily mandated procedural demands to attain habeas relief by urging the Court to view his claim of ineffective assistance "in its entirety."

The Court does note that the Second Circuit has instructed that "*Strickland* directs [courts] to look at the 'totality of the evidence before the judge or jury,' keeping in mind that 'some errors have a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture," and therefore that courts must "consider . . . errors [by counsel] in the aggregate."  *Lindstadt*, 239 F.3d at 199 (alterations and citation omitted) (quoting *Strickland*, 466 U.S. at 695–96); *see also id.* at 204 ("We assess the impact of these errors [by counsel] in the *aggregate*."); *accord Ortiz v. Martuscello*, No. 16-CV-7927, 2018 WL 10468148, at *5 (S.D.N.Y. Aug. 23, 2018) ("Any counsel errors must be considered in the aggregate rather than in isolation, as the Supreme Court has directed courts to look at the totality of the evidence before the judge or jury." (quotation marks omitted)).  This Court sees no indication that Judge McCarthy did not follow this clear precedent in considering the claims she determined were eligible for merits review, and this Court will do the same.

alleged "failure to investigate" separate and apart from his claims that his trial counsel failed to effectively use Kirkland as a witness and failed to object to the allegedly repugnant verdict, "Petitioner's failure to raise this claim in his Petition (let alone on appeal in state court) precludes [its] consideration."  *Read v. Superintendent Mr. Thompson*, No. 13-CV-6962, 2016 WL 165716, at *11 (S.D.N.Y. Jan. 13, 2016); *see also Reyes v. Artus*, No. 10-CV-7379, 2016 WL 1258976, at *4 (S.D.N.Y. Mar. 28, 2016) (rejecting "ineffective assistance of counsel claim based on trial counsel's alleged failure to investigate all reasonable defenses or to make a reasonable determination that such an investigation was unnecessary" where "this claim was not raised in either [the petitioner's] habeas petition[] or in his state proceedings and . . . therefore [is] improperly raised in his objections to the [R&R]"); *Davis v. Herbert*, No. 00-CV-6691, 2008 WL 495316, at *1 (S.D.N.Y. Feb. 25, 2008) ("[U]pon review of a habeas petitioner's objections to a magistrate judge's report and recommendation, the [c]ourt may not consider claims raised for the first time in the petitioner's objections."); *McPherson v. Johnson*, No. 95-CV-9449, 1996 WL 706899, at *2 (S.D.N.Y. Dec. 9, 1996) ("[The] [p]etitioner cannot raise, in his objection to the [m]agistrate [j]udge's [r]eport, new claims not raised in his initial petition.").

### b.  Failure to Adequately Prepare for Kirkland Testimony

In the Objections, Petitioner repeats his argument that his trial counsel rendered ineffective assistance with respect to the use of Kirkland as a witness for the defense at trial. Specifically, Petitioner argues that because his trial counsel called Kirkland to the stand without having reviewed the recording of Kirkland's interview with Gonzalez, his trial counsel was not prepared for the testimony Kirkland ultimately gave, which helped the prosecution rather than Petitioner.  (Obj's 6–7.)  In other words, Petitioner argues that "[trial] counsel was ineffective for even calling Kirkland in the first place," because "[c]learly, this witness did more damage than

31

good to [P]etitioner's case," which was allegedly so "close" that trial counsel's failure to adequately prepare for Kirkland's testimony was "the one mistake" that "tip[ped] the balance[] from [P]etitioner's innocence towards guilt." (*Id.*)

Petitioner's claim is denied. "It is well-settled . . . that counsel's decision whether or not to call a witness on behalf of a defendant is a tactical decision within the scope of reasonable trial strategy." *Feliciano v. United States*, No. 01-CV-9398, 2004 WL 1781005, at *5 (S.D.N.Y. Aug. 10, 2004); *see also United States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999) ("The decision whether to call any witnesses on behalf of the defendant, and which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." (quoting *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992))). And, as Judge McCarthy explained, "[c]ounsel's strategic choices 'made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" (R&R 55–56 (quoting *Strickland*, 466 U.S. at 690–91.) While trial counsel's failure to review and produce the recording and transcript of Kirkland's interview of Gonzalez before Kirkland was called to the stand may have been a mistake (trial counsel conceded as much in admitting that he "just completely forgot about it," (Resp't's Opp'n Ex. 5-B, at 824:2–3)), Petitioner cannot demonstrate that the tactical decision to call Kirkland to the stand "fell below an objective standard of reasonableness" under the first prong of the *Strickland* analysis. *Strickland*, 466 U.S. at 687–88.

It is clear to the Court that Petitioner's chief complaint regarding Kirkland's testimony is not his trial counsel's lack of preparation or his trial counsel's decision to call Kirkland to the stand, but rather the testimony that was ultimately elicited from Kirkland by the prosecution on cross-examination, which this Court agrees was not helpful to Petitioner's case. While not the subject of the instant Objections, many of Petitioner's previous arguments in this case have

centered on, for instance, the County Court's refusal to allow Petitioner to use "its critical exculpatory evidence obtained directly from [Gonzalez] by . . . Kirkland" during a suppression hearing.  (Pet. 10; *see also*, *e.g.*, *id.* at 22 ("Petitioner hired . . . Kirkland to obtain an affidavit from . . . . Gonzalez . . . . Kirkland successfully obtained the affidavit by showing . . . Gonzalez a photo array that included Petitioner's photo.  Petitioner has been denied the right to call . . . Kirkland as a witness to prove to the Grand Jury that he was not the perpetrator of this offense."); Pet'r's Reply 6 (raising due process claim based on *Brady* violation due to County Court's refusal to admit "a notarized statement prepared by Kirkland" which stated that "[Gonzalez] told the [prosecution] and law enforcement that he could not see who assaulted him" at a pretrial hearing).)[14]  As such, Petitioner evidently felt that Kirkland's testimony was of paramount importance to his case, and on direct examination, his counsel elicited testimony from Kirkland that "[Gonzalez] told [Kirkland] that he could not see who it was that attacked him because he had blood in his eyes."  (Resp't's Ex. 5-B, at 802:21–25.)  This Court can then deduce that Petitioner's complaint stems from the manner in which Kirkland's testimony unfolded on cross-examination, which Petitioner likely feels his trial counsel should have prevented.  But as Judge McCarthy explained, "[a] habeas court cannot 'second guess [counsel's] strategy choices' using hindsight," (R&R 56 (quoting *Mayo*, 13 F.3d at 533))), and the Court cannot conclude that the ex ante decision to call Kirkland as a witness was objectively unreasonable solely based on the ex post determination that Kirkland's testimony was not helpful to Petitioner's case.  *See*, *e.g.*, *McCain v. Petsock*, No. 88-CV-6243, 1989 WL 98995, at *3 (E.D.

---

[14] Petitioner's Reply includes as part of the same document both the "Reply to Respondent's Answer" and "Supplement to Habeas Petition," and the two are not consecutively paginated.  (*See* Pet'r's Reply.)  For ease of reference, when citing to "Petitioner's Reply," the Court refers to the document as a whole and to the ECF-stamped page numbers at the top right-hand corner of each page.

Pa. Aug. 21, 1989) (ruling that "the decision of [the] petitioner's counsel to call [a witness who was impeached on cross-examination] was not unreasonable when weighed against the value of his testimony contradicting the prosecution's [most] valuable witness" and thus that "[the] petitioner has not demonstrated that his trial counsel's performance was deficient").  "In hindsight, of course, it is clear that the decision to have [Kirkland] testify was a mistake. Importantly, however, hindsight is not the perspective from which such a decision must be judged."  *Covington v. Warden, Five Points Corr. Facility*, No. 11-CV-8761, 2014 WL 7234820, at *18 (S.D.N.Y. Dec. 8, 2014), *report and recommendation adopted*, 2016 WL 3407845 (S.D.N.Y. June 16, 2016); *see also id.* ("[The petitioner] cannot overcome the presumption that the decision to have [the witness] testify was sound trial strategy, even if it ultimately backfired.").

Even assuming that Petitioner can demonstrate that his trial counsel's lack of preparation or decision to call Kirkland as a witness was objectively unreasonable per the first prong of *Strickland*, Petitioner has failed to demonstrate that there is a reasonable probability that but for this error "the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 687–88, 694; *DeCarlo*, 2013 WL 1700921, at *4 ("[P]urely speculative arguments about the impact of an error do not establish prejudice." (alteration in original) (quotation marks omitted)).  As Judge McCarthy explained in recommending the denial of Petitioner's sufficiency of the evidence claim (a recommendation to which Petitioner did not object), the prosecution adduced copious evidence of Petitioner's guilt at trial, including: (1) "phone records of calls between Steadman and Petitioner demonstrating that Steadman called Petitioner within minutes of informing Gonzalez that she was on her way to his apartment, multiple times from Gonzalez's apartment, and over thirty times on October 10, 2007," (2) testimony from a police detective that

"Petitioner admitted to being at the scene of the crime during its commission," (3) "testimony

from Miller and Gonzalez corroborated by recorded jail calls between Petitioner, Miller[,] and

Baum in which Petitioner admitted to recruiting others to offer Gonzalez money, lodging,

clothing, food[,] and medicine if Gonzalez exonerated him," and (4) testimony from a neighbor

that "he observed a woman and two men fleeing [the scene of the crime] immediately after

Gonzalez jumped from his window."  (R&R 30.)  In light of all of this evidence, this Court is not

convinced that there is a reasonable probability that had Petitioner's trial counsel been more

prepared for Kirkland's testimony or chosen not to call Kirkland to the stand at all, "the result of

the proceeding would have been different."  *Strickland*, 466 U.S. at 694; *see also Boltz v. Mullin*,

415 F.3d 1215, 1223 (10th Cir. 2005) (rejecting the petitioner's claim that his trial counsel's

decision to call a witness who was later impeached constituted ineffective assistance, explaining,

"when we consider the overwhelming evidence against [the petitioner] . . . we cannot say that

there is a reasonable probability that had [the witness] not testified, the jury would have found

[the petitioner] not guilty"); *DeArmas v. People of the State of N.Y.*, 804 F. Supp. 524, 539

(S.D.N.Y. 1992) ("Petitioner's claim that his attorney was unprepared and disorganized is

similarly without merit.  He has failed to demonstrate a reasonable probability that absent

counsel's alleged unprofessional errors the result of the proceeding would have been different."

(collecting cases)).  Thus, this portion of Petitioner's ineffective assistance claim is meritless.

### c.  Allegedly Prejudicial Summation Statement

Petitioner argues in the Objections that "[i]n an unnecessary and damaging statement[] at

the end of . . . summation," his trial counsel "told the jury: 'The People of the State of New York

is [sic] served by any verdict you bring back here,'" which Petitioner contends was a "shocking

concession that[] allowed (and even invited) the jury to consider that [P]etitioner might be guilty

of the crime." (Obj's 7.) Petitioner alleges that this statement constituted a concession of Petitioner's guilt, which his trial counsel was only permitted to do with Petitioner's "express permission." (*Id.* at 8.)

While Petitioner is correct in principle that "[w]hen a client expressly asserts that the objective of '*his* defence' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt," *McCoy v. Louisiana*, 138 S. Ct. 1500, 1509 (2018) (quoting U.S. CONST. amend. VI), the Court does not agree that trial counsel's statement during summation constituted such a concession. A comparison to *McCoy*, cited by Petitioner in his Objections, (Obj's 8), is instructive. In *McCoy*, "the defendant vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt," but "the trial court permitted counsel, at the guilt phase of a capital trial, to tell the jury that the defendant 'committed three murders . . . . [H]e's guilty.'" 138 S. Ct. at 1505. By contrast, trial counsel here simply reminded the jury that its role was to serve the people of the state of New York by rendering a just verdict regardless of what that verdict was, presumably in an attempt to counteract any implication to the contrary created by New York state's convention of referring to the prosecution as "The People," and reassure the jury that a not-guilty verdict would serve the people of the state of New York just as much as a guilty verdict.[15]

---

[15] The Court also reminds Petitioner that "the jury's . . . traditional role [is to] find[] the facts and determin[e] the guilt or innocence of a criminal defendant." *Lockhart v. McCree*, 476 U.S. 162, 183 (1986). Thus, it was not trial counsel's statement that "allowed (or even invited) the jury to consider that [P]etitioner might be guilty of the crime," (Obj's 7), but rather the structure of our criminal justice system.

d.  Failure to Object to "Repugnant" Verdict

Petitioner argues in his Objections that trial counsel's decision "to sit back and allow the jury to reach" what Petitioner considers to be an inconsistent and repugnant verdict (an acquittal on the attempted robbery charges but a conviction on the burglary charges) "is the epitome of ineffective assistance."  (Obj's 10.)

First, the Court notes that Petitioner lodges no specific objection to Judge McCarthy's determination that this unexhausted claim is procedurally barred by the County Court's finding that this claim was ineligible for NY CPL § 440.10 relief, which constitutes an adequate and independent state ground for dismissal.[16]  (*See* R&R 53–54.)  The Court, upon review of the R&R, finds that "the factual and legal bases supporting" Judge McCarthy's ruling on this claim "are not clearly erroneous or contrary to law."  *Eisenberg*, 564 F. Supp. 2d at 226.

Even if the Court reached the merits of Petitioner's claim, the claim would be denied. Petitioner argued in the Petition that he was deprived of due process during the verdict phase of trial because the verdict was "repugnant and inconsistent."  (Pet. 6.)  In the R&R, Judge McCarthy determined, inter alia, that "the verdicts were not repugnant under state law," explaining that "[t]he elements of burglary and attempted robbery, as charged [by the County Court], are not inherently contradictory."  (R&R 22, 25.)  Critically, Petitioner does not object to this determination by Judge McCarthy, and this Court upon reviewing this portion of the R&R,

_____

[16] Petitioner does argue that "[Judge McCarthy] 'afford[ed] AEDPA deference to the state court rulings,'" and this was in error, because "the State court's adjudication of [P]etitioner['s] federal claim is not based on the merits" and instead "rests on procedural grounds," and thus, is "entitled to no deference." (Obj's 10 (quoting R&R 54).)  Petitioner misreads the R&R.  Judge McCarthy did not afford AEDPA deference to Petitioner's claim that his trial counsel deprived him of effective assistance by failing to object to the verdict as repugnant; instead, Judge McCarthy "afford[ed] AEDPA deference to the state court rulings" on Petitioner's claims based on his trial counsel's failure to object to hearsay testimony and failure to effectively utilize Kirkland as a witness.  (R&R 54–56.)

finds that "the factual and legal bases supporting" this finding "are not clearly erroneous or contrary to law." *Eisenberg*, 564 F. Supp. 2d at 226.  And, "[b]ecause the verdict was not inconsistent, and hence, not repugnant, Petitioner's trial counsel was not ineffective for failing to object to it." *Green v. James*, No. 15-CV-2825, 2021 WL 623746, at *8 (S.D.N.Y. Jan. 12, 2021), *report and recommendation adopted*, 2021 WL 2535485 (S.D.N.Y. June 21, 2021); *accord Epps v. Poole*, 2010 WL 1991517, at *8 (E.D.N.Y. May 14, 2010) ("An objection to the verdict as inconsistent would have been meritless, and trial counsel cannot be faulted for failing to make it."), *aff'd*, 657 F.3d 48 (2d Cir. 2012); *see also United States v. Regalado*, 518 F.3d 143, 149 n.3 (2d Cir. 2008) ("Failure to make a meritless argument does not amount to ineffective assistance." (alteration and citation omitted)).

### e.  Failure to Investigate Alibi

As explained above, the Court construes Petitioner's Objections as raising an objection to Judge McCarthy's dismissal of Petitioner's claim that his trial counsel deprived him of effective assistance of counsel by failing to investigate whether Petitioner was in Brooklyn at the time of the crimes.  (*See* Obj's 2 (arguing that "[Judge McCarthy] failed to give" Petitioner's argument that trial counsel "failed to investigate [P]etitioner's alibi that he was in Brooklyn at the time of the crime . . . proper consideration").)

The Court agrees with Judge McCarthy and finds this unexhausted claim to be "plainly meritless." *Rhines*, 544 U.S. at 277.  As Judge McCarthy explained, while counsel is obligated "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," (R&R 52 (quoting *Strickland*, 466 U.S. at 690–91)), "[t]he duty to reasonably investigate does not compel counsel to investigate comprehensively every lead or possible defense or to scour the globe on the off-chance something will turn up," (*id.* (quoting

*Krasniqi v. United States*, 195 F. Supp. 3d 621, 633 (S.D.N.Y. 2016))).  And, "if there is a 'reason to believe that pursuing certain investigations would be fruitless or even harmful, failure to pursue those investigations may not later be challenged as unreasonable.'"  (*Id.* at 52–53 (quoting *Greiner v. Wells*, 417 F.3d 305, 321 (2d Cir. 2005))).  As Judge McCarthy noted, here trial counsel could have reasonably found this investigation not worth pursuing given that the resulting evidence—assuming, arguendo, that it existed—may not have been helpful to Petitioner's case, since it would have placed Petitioner in Westchester County on the day of the crimes when he resided in Brooklyn.  (*Id.* at 53.)  This Court therefore agrees with and adopts Judge McCarthy's recommendation in finding Petitioner's "decision not to investigate" to be reasonable under the circumstances and not indicative of ineffective assistance, applying the appropriate "heavy deference to counsel's judgments." *Carter v. Fields*, No. 19-CV-5364, 2020 WL 5819899, at *13 (E.D.N.Y. Sept. 29, 2020) (quotation marks omitted).

### f.  Failure to Object to Unspecified Hearsay

The Court further construes Petitioner's Objections as raising an objection to Judge McCarthy's dismissal of Petitioner's claim that his trial counsel deprived him of effective assistance of counsel by failing to object to unspecified hearsay.  (*See* Obj's 2 (arguing that "[Judge McCarthy] failed to give" Petitioner's argument that trial counsel "failed to object to hearsay at trial . . . proper consideration").)

The Court agrees with Judge McCarthy and finds that because Petitioner failed to articulate which statements were allegedly improper, the Petition is facially insufficient to meet Petitioner's burden "to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner." *Woodford*, 537 U.S. at 25.  (*See* R&R 54.)  The Court further agrees with Judge McCarthy's observation that an attorney's decision not to object to a witness's

testimony is generally considered a strategic decision that is unchallengeable on habeas review. (*See id.* (citing *Charles v. Fischer*, 516 F. Supp. 2d 210, 217 (E.D.N.Y. 2007) ("[I]t is understandable that a defense counsel may wish to avoid underscoring a prejudicial remark in the minds of the jury by drawing attention to it [through an objection].")).)

### III.  Conclusion

The Court, having conducted a thorough review of the remainder of the R&R, finds no error.  The Court therefore adopts Judge McCarthy's Recommendation that the writ of habeas corpus be dismissed.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c); *Lucidore v. N.Y. State Div. of Patrol*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a [petitioner's] good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 71 F. Supp. 2d 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and noting that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it was not taken in good faith).

The Clerk of Court is respectfully directed to enter judgment in favor of Respondent, send a copy of this Order to Petitioner at the address listed on the docket, and close the case.

SO ORDERED.

Dated:   November 19, 2021
         White Plains, New York

_____
        KENNETH M. KARAS
      United States District Judge